IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**RODNEY PAUL TENNEY,**

      **Plaintiff,**

v.                                      **CIVIL ACTION NO.: 5:20-CV-202**
                                         **(JUDGE BAILEY)**

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case arises from the denial of Plaintiff Rodney Paul Tenney's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**.

## II.  PROCEDURAL HISTORY

On or about July 18, 2017, Plaintiff filed the present claim for DIB, with an alleged onset date of disability of June 15, 2017. R. 18. Plaintiff's application for DIB was initially denied on October 13, 2017, and denied again upon reconsideration on February 13, 2018. R. 68-93. After these denials, on February 26, 2018, Plaintiff requested a hearing before an ALJ. R. 112-113. On April 10, 2019, a hearing was held before an ALJ. R. 40-67. At the hearing, Plaintiff was represented by counsel and appeared in Morgantown, West Virginia, while the ALJ appeared from the Falls Church National Hearing Center Satellite Office. R. 42. Linda Dezack, a vocational expert ("VE"), appeared in and testified at the hearing. R. 61-66. On July 31, 2019, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 15-32. On August 5, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-5.

On September 18, 2020, Plaintiff, through counsel, Brian D. Bailey, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl. [ECF No. 1]. On February 16, 2021, the Commissioner, through counsel Maximillian F. Nogay, Assistant United States Attorney, filed his Answer, the Administrative Record of the proceedings, and Amended Answer on February 16, 2021. [ECF Nos. 10, 11, 12]. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J. [ECF No. 14]; Def.'s Mot. Summ. J. [ECF No. 17]. Plaintiff then filed a reply to the Commissioner's brief. [ECF No. 18].

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III. BACKGROUND

#### A. Personal History

Plaintiff was born on March 22, 1967, and was 50 years old at the time he made his application for DIB. R. 68, 69. At the time of making his application, he was approximately 70 inches tall and weighed 270 pounds. R. 68. He completed the eighth grade and part of the ninth grade. R 56, 195. Nothing from the undersigned's review of the record shows that Plaintiff obtained a GED. Plaintiff lives with his mother. R. 59. Plaintiff last worked at a lumber mill as a loader/operator, ceasing work on June 15, 2017. R. 194-195. Plaintiff has not engaged in substantial gainful activity since his alleged onset date of Jun 15, 2017. R. 21. Plaintiff alleges that he is limited in his ability to work due to right arm pain/swelling, sickness from excessive exposure to the sun, back pain, and pain in his right hip. R. 194.

#### B. Medical History

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 16, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and

recommendation. <u>See</u> Br. Supp. Pl.'s Mot. Summ. J. [ECF No. 14-1, at 2-6]; Mem. Supp. Def.'s Mot. Summ. J. [ECF No. 17-1, at 2-7].

## IV. THE FIVE-STEP EVALUATION PROCESS

To be "disabled" under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional

4

capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If it is determined that the claimant is "disabled" or "not disabled" during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.     ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity for a continuous twelve-month period. R. 21. The ALJ here determined that Plaintiff did not engage in substantial gainful activity after his alleged onset date, June 15, 2017. Id. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: right shoulder superior labrum anterior and posterior (SLAP) tear status post two surgeries; degenerative changes in the bilateral knees; degenerative disc disease of the lumbar

5

spine; respiratory disorder; obesity; major depressive disorder; and borderline intellectual functioning. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. Id.  At step four, the ALJ determined that Plaintiff's RFC as follows:

> "to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally perform postural maneuvers, but he cannot climb ladders, ropes, or scaffolds; he cannot reach overhead with the right upper extremity; he can occasionally push and/or pull using the right upper extremity; he can tolerate frequent exposure to vibration; he can tolerate frequent exposure to fumes, odors, dust, gases, and other pulmonary irritants; he cannot work at unprotected heights or on uneven terrain; he can perform simple, routine, and repetitive tasks; he requires a work environment where change in minimal; he can tolerate occasional contact with supervisors and coworkers; he cannot tolerate contact with the general public; and he cannot perform tandem work."

R. 24 (emphasis added). Then, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 31. At step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. Id. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 32.

## VI.   DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

### B. Contention of the Parties

In his Brief in Support of his Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 14-1]. Plaintiff asserts that (1) the ALJ erred rejecting the opinion of Plaintiff's treating physician, Dr. Boardwine, and (2) the ALJ erred in rejecting all of the medical opinions and then not adhering to the requirements of SSR 96-8p and the Fourth Circuit's analysis in Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019). Id. at 8-16. Based on the alleged errors, Plaintiff requests that the Court reverse the Commissioner's decision. Id. at 6-15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. [ECF Nos. 17-1]. Addressing Plaintiff's arguments for summary

judgment respectively, the Commissioner avers that (1) substantial evidence supports the ALJ's finding that Plaintiff could perform work existing in significant numbers in the national economy; (2) the ALJ properly evaluated the medical evidence; and (3) the ALJ correctly determined Plaintiff's RFC, and in so doing accounted for the functional limitations stemming from Plaintiff's impairments. [ECF No. 17-1 at 9-17]. Accordingly, the Commissioner requests that the Court affirm his decision. Id. at 17.

### C. Analysis of the Administrative Law Judge's Decision

#### 1. The ALJ Used the Correct Analysis to Assess Medical Opinion Persuasiveness.

As a threshold matter, Defendant draws the Court's attention to a relatively recent development in the agency's regulations requiring an ALJ to consider a medical opinion's persuasiveness, rather than giving weight to a medical opinion as previously directed under the regulations. 20 C.F.R. § 404.1520c(b)(2). Under this regulation, an ALJ is to focus on a medical opinion's supportability and consistency in determining its persuasiveness. The implication here is that a medical opinion's source is not determinative of its persuasiveness. Further, the newer regulations require ALJs to explain how supportability and consistency ("the most important factors") were considered in their decisions. Id. To this end, there are other factors which an ALJ may comment upon, but an ALJ is not required to do so. Id. Defendant emphasizes this regulatory development because Plaintiff appears to rely on the prior standard in lodging his argument. Plaintiff, though, responds that under either standard, the ALJ erred and should be reversed.

Of particular focus with this analysis is a handwritten note, dated March 26, 2018, ostensibly provided by a treating physician, Dr. Walter Boardwine, D.O. R. 426. It is not

8

disputed that Dr. Boardwine otherwise treated Plaintiff, or that other items in the record reflect such treatment. See R. 423-425, 427-460. Rather, the issue is whether the ALJ should have found the note to be a medical opinion under the regulations in the first place, and if it should be considered a medical opinion, how persuasive it should be. Plaintiff contends that the ALJ erred in finding that the note is not a medical opinion. Plaintiff argues that if it were properly considered to be a medical opinion, then it is persuasive enough to support a finding that Plaintiff has the RFC for sedentary work instead of light work. And if Plaintiff has the RFC for only sedentary work, considering his age and work history, the argument goes, then there is not work existing in significant numbers in the national economy which Plaintiff could perform, and he is disabled under the Act.

However, the undersigned concludes that the ALJ properly found that the note is not a medical opinion under the regulations, and that even if it were considered to be such a medical opinion, it is unpersuasive. The ALJ rightly points out that the handwritten note, R. 426, is quite difficult to read. The signature at the bottom of the note is cut off and illegible. Thus, neither the ALJ nor this Court can be certain of the identity of the note's author. And by no means can the credentials of the signatory be ascertained from the note. As such, the ALJ rightly found that the document is not conclusively the opinion of a medical source.

Plaintiff stresses that Dr. Boardwine signed the note at the top of the page as well as the bottom of the page where the signature is cut off, and that the fax number contained on the page is the same as that reflected on other records originating from Dr. Boardwine's office. Plaintiff also would have the Court compare the signature(s) of Dr. Boardwine on this note to Dr. Boardwine's signature otherwise in the record. However,

the undersigned cannot be confident that the marking at the top of the page is Dr. Boardwine's signature. And the undersigned will not engage in a handwriting analysis to draw inferences about the genesis of the note. As such, the undersigned does not recommend that the ALJ's determination here be disturbed.

Moreover, even if the handwritten note would be considered a proper medical opinion for these purposes, it is unpersuasive in the context of the overall record. Plaintiff focuses on an excerpt from the note: "Not enough to say he can't do occasional walking standing." R. 426. Plaintiff argues that this amounts to a double negative by which Dr. Boardwine concludes that Plaintiff is limited to occasional standing and walking. However, this portion of the note is, frankly, confusing. The meaning of it is ambiguous. It is especially so because, in the record otherwise, Dr. Boardwine was focused on Plaintiff's right shoulder, rather than Plaintiff's standing/walking. R. 423, 427, 432. In such review, Dr. Boardwine also concluded that Plaintiff was not at risk of falling. Id. And other review of Plaintiff's condition, such as that by provider Kessa Thorpe, concluded that Plaintiff was not at risk of falling and had not fallen in the preceding year. R. 478. And review by yet other provider concluded that Plaintiff had only mild degenerative changes in his knees. R. 413-414. As such, even considering the substance of the handwritten note, the ALJ's conclusion here is supported by substantial evidence.

**2. The ALJ Otherwise Properly Evaluated the Medical Opinions in the Record to make the RFC Determination in Question.**

To assess a claimant's RFC, an ALJ is directed to consider all of the medical evidence and other evidence of record. 20 C.F.R. § 404.1545(a)(3). And generally, it is a claimant's responsibility to provide the evidence necessary to assess RFC. Id. Importantly, the regulations specify that RFC is the <u>most</u>, not the least, that a claimant

10

can do in spite of the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). While a claimant may put forth <u>subjective</u> complaints (and the ALJ may consider them), such subjective complaints, standing alone, do not establish disability. 20 C.F.R. § 404.1529(a). The factors and criteria in the pertinent regulations providing for the ALJ's <u>objective</u> analysis are pivotal in an ALJ's determination of RFC.

Plaintiff argues that the ALJ did not adhere to SSR 96-8p and applicable Fourth Circuit precedent when the ALJ stated:

> As for medical opinion and prior administrative medical findings, the undesigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources.

R. 29-30. To this end, in defining RFC, SSR 96-8p provides:

> RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources.

<u>Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims</u>, SSR 96-8P (S.S.A. July 2, 1996).

As set forth in the prior analysis above, Plaintiff is mistaken in questioning the <u>weight</u> which the ALJ gave to medical opinions, rather than how the ALJ reviewed the <u>persuasiveness</u> of them. Thus, Plaintiff's analysis of Fourth Circuit caselaw about the appropriate weight to give medical sources, is misplaced.

To this question of how or whether the ALJ evaluated the persuasiveness of the several medical opinions in the record, the ALJ evaluated the following opinions of: (1) state agency physician Dr. Noon, (2) state agency physician Dr. Lateef, (3) state agency

psychologist Dr. Roman (4) state agency psychologist Dr. Boggess, (5) consultative examiner Mr. Morgan, and (6) Plaintiff's consultative psychologist Mr. McCullough. In following the regulatory framework, the ALJ analyzed these opinions and found them either to be not persuasive or qualified them. Where the ALJ found them to be unpersuasive, the ALJ explained their inconsistencies with the overall evidentiary record.

The undersigned does not repeat the ALJ's lengthy, point-by-point analysis of these opinions. But in summary, the ALJ explained how Mr. Morgan's review actually showed that Plaintiff's lower IQ scores are inconsistent with Plaintiff's past adaptive functioning demonstrated elsewhere in the record. Basically, the ALJ explained how Plaintiff's IQ scores underestimate his abilities. As for Drs. Noon's and Lateef's findings, it appears that the ALJ actually found them to be not persuasive in that they did not support further restriction of Plaintiff in light of shoulder surgeries. In other words, in discounting these opinions, it appears that the ALJ actually restricted Plaintiff even more in determining the RFC.

As to Mr. McCullough's opinion, the ALJ explained how that opinion's conclusions about Plaintiff's anticipated extreme difficulty in a work setting made it an outlier, given other mental status examinations in the record which would favor only moderate limitations for Plaintiff, at most. And as to the opinions of Drs. Roman and Boggess, the ALJ found them to be not persuasive in that they did not support further restriction of Plaintiff as the ALJ saw fit. In determining Plaintiff's RFC, it appears that the ALJ actually restricted Plaintiff even more than these opinions would provide.

As a related matter, the parties argue as to the application of Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019). In this decision, the Fourth Circuit provided:

> [A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.

Thomas, 916 F.3d at 311 (citing Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018)). Plaintiff argues that the ALJ did not follow this directive when the ALJ rejected the handwritten note purportedly of Dr. Boardwine and avoided explanation of Plaintiff's limitations for standing/walking. Plaintiff also argues that the ALJ did not perform a function-by-function analysis of Plaintiff's physical and mental limitations before arriving at the RFC.[1]

The Commissioner rightly points out, though, that there is not a gap in the ALJ's analysis, and that, in fact, the ALJ made a number of specific, factual determinations about Plaintiff's abilities and limitations. This is quite in contrast to how the ALJ proceeded in Thomas, and in line with what the Fourth Circuit requires of an ALJ in these circumstances. In fact, the ALJ in the case at bar particularly set forth how the Plaintiff can sustain a workday, and did so after a comprehensive review of an array of impairments (and how those impairments, individually and in combination, affect Plaintiff's ability to work). And discounting the handwritten note was not dodging a hard question; rather, it reflects the ALJ's close and critical review of the record. Finally, there is no serious argument that the ALJ found the RFC first and justified it later. Rather, the ALJ unambiguously explains how each piece of the record analyzed gives rise to the ultimate conclusion about RFC.

---

[1] Plaintiff also argues about how the ALJ did or did not accord weight to medical opinions in contravention of Thomas. However, as previously set forth, the Plaintiff's focus on weight, rather than persuasiveness, is misplaced.

13

Thus, given the ALJ's detailed review and reasoning, and nuanced conclusions as to the persuasiveness of the opinions noted above, there is no error as to the ALJ's consideration of the evidence.

### VII. RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable JOHN PRESTON BAILEY, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 30th day of November, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE